IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALISA A. SPRAGGINS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 16 C 7304 ) ) Magistrate Judge Sidney I. Schenkier |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1] | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER[2]

Plaintiff Alisa Spraggins seeks reversal and remand of the Commissioner's decision denying her applications for Social Security benefits (doc. # 20: Pl.'s Mot. for Summ. J.). The Commissioner has filed a cross-motion asking the Court to affirm its decision (doc. # 25: Def.'s Mot. for Summ. J.). For the reasons that follow, we grant Ms. Spraggins' motion to remand.

### I.

Ms. Spraggins filed her applications for Social Security benefits in May 2011, alleging she became disabled on September 9, 2010 (R. 180-93). Her date last insured was December 31, 2015 (R. 652). On January 22, 2013, after a hearing, the administrative law judge ("ALJ") denied Ms. Spraggins' applications for benefits in a written decision (R. 16-35), and the Appeals Council denied her subsequent request for review (R. 1). Ms. Spraggins sought review in federal district court, and on May 20, 2015, the district court issued an opinion reversing and remanding the ALJ's decision (R. 813-39). The ALJ held another hearing on April 7, 2016, and on May 6,

---

[1]Pursuant to Federal Rule of Civil Procedure 25(d), we have substituted Acting Commissioner of Social Security Nancy A. Berryhill as the named defendant.

[2]On September 6, 2016, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to the Court for all proceedings, including entry of final judgment (doc. # 7).

2016, the ALJ issued another written opinion denying Ms. Spraggins' applications for benefits (R. 647-89). Ms. Spraggins did not file exceptions with the Appeals Council and the Appeals Council did not assume jurisdiction over the case, making the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.984.

## II.

On September 9, 2010, at age 41, Ms. Spraggins was injured while working as a forklift driver when a package fell and crushed the cab of the forklift she was operating, striking her head (R. 414). Ms. Spraggins is 5'3" tall, and her weight during the relevant time period (2010 to 2016) fluctuated from a low of 180 pounds to a high of 261 pounds (R. 703-04, 2114). Ms. Spraggins received non-surgical treatment from orthopedist Theodore Fisher, M.D., for pain in her neck and arms, but physical therapy, medication and steroid injections did not alleviate her pain (R. 366-75). On May 13, 2011, a physical therapist conducted a functional capacity evaluation ("FCE") of Ms. Spraggins and concluded that she could work for three to four hours a day, sit for four to five hours total for 60 minutes at a time, stand for one to two hours total for 15 minutes at a time, walk for a total of three to four hours for occasional, moderate distances, and occasionally (up to 1/3 of the work day) grasp with either hand (R. 463-64). In June 2011, Dr. Fisher completed a report noting Ms. Spraggins continued to complain of neck, back and upper extremity pain, and she had decreased sensation in her left hand and decreased range of motion in her cervical spine (R. 481). He opined that Ms. Spraggins did not require surgery, but that she was at maximum medical improvement with the restrictions outlined in the FCE (R. 477-80).

Toward the end of 2011, Ms. Spraggins also developed low (lumbar) back pain (R. 574-75, 586-88, 611). In November 2012, a neurologist examined Ms. Spraggins and found limited movement of her neck and decreased reflexes in her upper and lower extremities due to pain (R.

2

643-45). Ms. Spraggins reported that her pain radiated from her neck down her spine and into her calves at a level of eight to ten out of ten (*Id.*). She also complained of numbness in both feet and tingling and weakness in her upper extremities (*Id.*). At a follow-up appointment in January 2013, Ms. Spraggins reported that physical therapy had made her lumbar and cervical pain worse, and she was getting throbbing headaches (R. 638-39). On examination, she continued to have decreased reflexes in her upper and lower extremities (R. 639-40).

In February 2013, MRIs of Ms. Spraggins' lumbar and cervical spine showed moderate to severe broad-based disc bulge with flattening of the thecal sac (membrane surrounding the spinal cord) and mild to moderate bilateral neuroforaminal narrowing (of the spinal nerve passages) (R. 1588-89). On March 14, 2013, Sergio Mercado, M.D., completed a cervical spine medical source statement, opining that due to headaches and pain and limited movement in her neck, Ms. Spraggins could only sit or stand for a total of two hours a day, for 15 minutes at a time, and she was likely to be off-task 25 percent or more of the workday (R. 1818-22).

Ms. Spraggins continued to have pain and tenderness in her lower back and neck throughout 2014. She made several visits to a pain clinic that year for various facet joint and epidural steroid injections as well as medial branch blocks; the injections provided some short-term relief, but the pain always returned (*see, e.g.*, R. 1572-79, 1656-58, 1663). Ms. Spraggins was also prescribed multiple medications for her pain, including Tramadol (a narcotic), Elavil (for nerve pain), and gabapentin (for nerve pain) (R. 1972, 1968). MRIs of Ms. Spraggins' cervical, thoracic and lumbar spine in 2014 showed worsening degenerative changes, including disc protrusion in her lumbar and cervical spine and facet joint hypertrophy in the thoracic spine (R. 1560-63, 1752-53). Ms. Spraggins was also diagnosed with scoliosis (R. 1636).

Cristina Brotea, M.D., was one of Ms. Spraggins' treating physicians (R. 674). On June 3, 2014, Dr. Brotea filled out a physical impairment questionnaire, in which she opined that due to degenerative joint disease and severe cervical and low back pain, Ms. Spraggins could sit, stand or walk for only one hour in an eight-hour workday, needed to lay down every 30 minutes for 45 to 60 minutes, and had marked limitations in her ability to bilaterally reach, handle, and finger (R. 1797-1800). Dr. Brotea noted that Ms. Spraggins' medications made her sleepy and dizzy, and Dr. Brotea wrote that "all days" were bad days for Ms. Spraggins (R. 1800).

Ms. Spraggins continued to seek pain relief through injections and narcotic medications throughout 2014 (*see, e.g.*, R. 1656-73). On June 19, 2014, Ms. Spraggins was examined by a neurosurgeon, who noted that she had "extreme difficulty moving her arms or legs at all" due to "extreme deconditioning and obesity" (R. 1795). In December 2014, her physician noted that she had increasing weakness, numbness and difficulty walking (*see* R. 1754-57).

Despite continuing to receive pain injections and take narcotic and nerve pain medication, Ms. Spraggins' back and neck pain continued in 2015 (*see, e.g.*, R. 1823-25, 1979-2010). Her physicians noted that Ms. Spraggins had reduced reflexes, and her pain was affecting her gait (*Id.*; *see also* R. 2104-08). Her cervical and lumbar ranges of motion were limited by pain in all directions, and she had spasms and tenderness in her cervical and lumbar spine and trapezius muscles (between lower thoracic spine and shoulder blades) (*see* R. 2109).

In 2014 and 2015, Ms. Spraggins was also diagnosed and periodically treated for dyspnea (shortness of breath) (*see, e.g.*, R. 1670) and obstructive sleep apnea (*see, e.g.*, R. 1943). In September 2015, she was also diagnosed with premature ventricular contractions, or extra abnormal heartbeats (R. 1895).

On August 20, 2015, Ms. Spraggins began receiving treatment from Sarvottam Bajaj, M.D. (R. 2028). On March 18, 2016, Dr. Bajaj filled out a functional capacity form opining that Ms. Spraggins had back, neck and shoulder pain that reduced by more than 50 percent her ability to sit, stand, walk, lift, carry and reach, but had no effect on her fine manipulation or ability to use a keyboard (R. 2028-29).

### III.

The ALJ held a hearing on April 7, 2016. At that time, Ms. Spraggins' weight was 232 pounds, down from its peak of 286 pounds (R. 703-05). Ms. Spraggins testified that she took several medications for severe pain in her neck, back and shoulder. These made her dizzy and drowsy, and she took daily naps of two to three hours (R. 706-07). She also had chest pain, shortness of breath and sleep apnea that added to her dizziness and fatigue (R. 712, 714).

Ms. Spraggins shopped for groceries with the assistance of her adult daughter and a motorized cart (R. 715). She sometimes washed dishes and cooked, but she could stand at the stove for only 10 to 15 minutes at a time, and she used a cane to move around her house (R. 716-18). Ms. Spraggins testified that she could not sit for more than about 15 minutes before her lower back began to hurt and her legs became numb, and when she did sit, she kept her feet elevated to reduce swelling (R. 718-19).

The medical expert ("ME"), Sheldon Slodki, M.D., testified that Ms. Spraggins has had "very extensive treatment" for her low back and cervical spine problems, including multiple medial branch blocks and epidural and cervical steroid injections at a number of locations (R. 726-27). He acknowledged that the combination of medications Ms. Spraggins took and her obstructive sleep apnea could lead her to nap during the day (R. 730, 736).

5

Dr. Slodki noted that several medical source statements in the record opined that Ms. Spraggins could perform less than sedentary work but that the FCE appeared to recommend sedentary work for Ms. Spraggins (R. 728). Dr. Slodki opined that Ms. Spraggins did not meet or equal a Listing, but that she was reduced to sedentary work with environmental limitations throughout the entire period that she claimed to be disabled -- from soon after her 2010 injury to more recently, when her obesity worsened her problems (R. 729). On cross examination by Ms. Spraggins' attorney, Dr. Slodki acknowledged that the FCE stated that Ms. Spraggins would be limited to a three to four hour work-day, which "would even be less than sedentary" (R. 735). In response to further questioning, Dr. Slodki stated that he did not have to "agree or disagree" with any of the findings in the record (*Id.*). Dr. Slodki stated that his opinions were based on the "objective evidence" and that he did not take into account Ms. Spraggins' testimony or credibility issues (R. 734).

The ALJ then presented the vocational expert ("VE") with a hypothetical individual who could lift a maximum of 10 pounds, and stand up to two hours and sit up to six hours in an eight hour day (R. 738-39). The VE testified that work was available in the national economy for that individual (R. 739). However, if the individual was further limited to occasional use of the hands for grasping and fine manipulation, or was required to elevate her legs to 90 degrees for two hours a day, the VE testified that no work would be available (R. 744).

## IV.

On May 6, 2016, the ALJ issued a decision finding Ms. Spraggins was not disabled since her alleged onset date of September 9, 2010, through the date of the opinion. At Step 1, the ALJ stated that Ms. Spraggins had not engaged in substantial gainful activity since her alleged onset date (R. 652). At Step 2, the ALJ found that Ms. Spraggins had the severe impairments of

6

degenerative disc disease of the cervical and lumbar spine, chronic obstructive pulmonary disease, asthma, obstructive sleep apnea, premature ventricular contractions, hypertension, migraine headaches and obesity (R. 652). The ALJ determined that Ms. Spraggins also had several non-severe impairments, including hyperlipidemia, chest pain, coronary disease, cardiac ischemia, chronic kidney disease, and depressive disorder (R. 653-54). At Step 3, the ALJ reviewed the Listings for disorders of the spine, thyroid disorders, chronic pulmonary insufficiency, asthma, sleep-related breathing disorders and recurrent arrhythmias, and determined that Ms. Spraggins' impairments, alone or in combination, did not meet or medically equal a Listing (R. 655). The ALJ summarized the medical evidence in the record in some detail to justify his Step 3 findings (*see* R. 655-68).

The ALJ then determined that Ms. Spraggins had the residual functional capacity ("RFC") to perform sedentary work, with the ability to sit for about six hours and walk and/or stand for about two hours out of an eight-hour workday, and push, pull and operate hand or foot controls up to her lifting/carrying maximum of 10 pounds (R. 668-69). Further, Ms. Spraggins could not climb ladders, ropes or scaffolds and had to avoid all exposure to workplace hazards and respiratory irritants (R. 669).

In reaching that conclusion, the ALJ summarized Ms. Spraggins' testimony at the hearing as to her pain and functional limitations, but found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . ." (R. 669-70). The ALJ acknowledged that the individuals treating Ms. Spraggins "accepted her reports of pain," as "she was prescribed medication, administered multiple injections into her cervical and lumbar spines, and referred to physical therapy" (R. 670). Nonetheless, the ALJ stated that "the object[ive] evidence does not

7

provide any indication the pain was so severe that she would be unable to perform work-related activity" (*Id.*).

The ALJ acknowledged that an MRI study in March 2014 showing moderate to severe spinal canal narrowing and imaging results from January 2013 would support Ms. Spraggins' complaints of decreased sensation in her left lower extremity (R. 671). The ALJ also noted that a neurosurgeon opined that Ms. Spraggins' slow gait and decreased lumbar motion were consistent with her severe deconditioning and obesity (*Id.*). However, the ALJ contrasted these records with an EMG/NCV (electromyography/nerve conduction velocity) study performed in November 2010 that found no evidence of radiculopathy, neuropathy or other nerve related abnormalities (*Id.*) The ALJ concluded that the "extent of degenerative joint disease in the claimant's lumbar spine did not appear sufficient to generate the extent of pain to which she testified," and that the limitations in the RFC adequately accommodated for the pain in Ms. Spraggin's back and lower extremities, numbness or abnormal sensations in her hands, and any dizziness or fatigue (R. 671-72).

The ALJ next addressed the medical opinion evidence in the record. The ALJ gave the opinion of the medical expert at the hearing, Dr. Slodki, "great weight when determining the claimant's residual functional capacity," reasoning that Dr. Slodki had supported his opinion with a "detailed explanation that relied on references to the evidence to support it" after reviewing the "complete documentary record" (R. 672). The ALJ "adopted" Dr. Slodki's opinion as to Ms. Spraggins' physical RFC (*Id.*).

Besides a February 2011 opinion that Ms. Spraggins did not have functional limitations in her left shoulder (to which the ALJ gave great weight, R. 673), the ALJ gave the other physical RFC opinions in the record some, little or no weight. The ALJ gave "some weight" to

Dr. Fisher's opinions between November 2010 and January 2011 "to the extent that they showed the claimant's functional ability was variable after the accident" (*Id.*). However, the ALJ gave "no weight" "[w]ith regard to the issue of disability," because Dr. Fisher's opinions "each presented a snapshot of the claimant's functional ability, but were not necessarily indicative of her ability within the context of the complete treatment record" (*Id.*). The ALJ gave little weight to the March 2011 opinion of an orthopedic spine specialist who found Ms. Spraggins did not need work restrictions for her cervical spine problems because "later MRI studies would show comparatively worse degenerative changes affecting the claimant's cervical spine" (*Id.*).

The ALJ separately considered Dr. Fisher's narrative report from June 2011, which stated that Ms. Spraggins could perform light work, based on the FCE that was performed (R. 674). The ALJ gave this opinion "some weight," because the work the FCE and Dr. Fisher described "was actually closer to work performed at a sedentary exertional level, as defined by the Social Security Administration" (*Id.*). The ALJ went on to state that "[w]hile Dr. Fisher's opinion was supported by the evidence available to him and was not contradicted by other evidence, it was given little weight with regard to the issue of disability" because "Dr. Fisher had not met with the claimant after June 2011, so his opinion was not reflective of the complete record" (*Id.*).

The ALJ also gave "little weight" to Dr. Mercado's 2013 cervical spine medical source statement, stating that "those limitations were [] not supported by the physician's treatment notes or the overall medical record" (R. 674). The ALJ gave "some weight" to Dr. Brotea's June 2014 opinion "to the extent that [Dr. Brotea] "had treated the claimant for many years and acknowledged the claimant's impairments limited her ability to work" (*Id.*). However, the ALJ stated that "with regard to the issue of disability, the opinion was given no weight, as it appeared Dr. Brotea had relied more on the claimant's statements than her objective treatment notes when

9

filling out the questionnaire" (R. 674-75). The ALJ specifically pointed out Dr. Brotea's note that "[a]ll days are bad days" was not supported by her treatment notes or recent medical evidence (R. 675). The ALJ gave only "some weight" to the September 2014 opinion of a non-examining state agency medical consultant who opined that Ms. Spraggins could perform light work, because other evidence showed Ms. Spraggins was more limited than that (R. 672).

The ALJ gave little weight to the RFC statement filled out by Ms. Spraggins' most recent primary care physician, Dr. Bajaj, in March 2016 (R. 675). The ALJ explained that "there was no evidence showing that the physician had met with the claimant after September 2015, so it is reasonable to assume that Dr. Bajaj had relied on the claimant's reported limitations when completing the statement" (*Id.*).

Ultimately, the ALJ concluded that Ms. Spraggins could perform her past relevant work as an administrative clerk (R. 675).[3] Alternatively, the ALJ stated that other jobs existed in the national economy that Ms. Spraggins is also able to perform (R. 676).

## V.

We review the ALJ's decision deferentially to determine if it was supported by "substantial evidence," which the Seventh Circuit has defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ghiselli v. Colvin*, 837 F.3d 771, 776 (7th Cir. 2016). "Although we will not reweigh the evidence or substitute our own judgment for that of the ALJ, we will examine the ALJ's decision to determine whether it reflects a logical bridge from the evidence to the conclusions sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014).

---

[3] We note that the ALJ erroneously stated that Ms. Spraggins retained the ability to work "at a light level of exertion," despite limiting her to a sedentary RFC (R. 675). This was a mere scrivener's error that did not affect the ALJ's opinion and does not affect the Court's determination here.

10

Plaintiff's primary argument is that remand is necessary because the ALJ erred in weighing the medical opinion evidence (doc. # 21: Pl.'s Mem. at 10-17). We agree. The ALJ's decisions as to the weight to give the opinions of Ms. Spraggins' physicians were often inconsistent, confusing or not adequately supported or explained.

## VI.

As stated above, the ALJ gave the non-examining medical expert's opinion great weight, but gave some, little or no weight to the opinions of Ms. Spraggins' treating physicians, including Drs. Fisher, Mercado, Brotea and Bajaj. "Under the Treating Physician Rule, a treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016) (internal citations and quotations omitted). "When controlling weight is not given, an ALJ must offer good reasons for doing so . . ." *Id.* (citing factors listed in 20 C.F.R. § 404.1527(d)(2)); 20 C.F.R. § 404.1527(c)). "An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Vanprooyen v. Berryhill*, 864 F.3d 567, 573 (7th Cir. 2017) (internal citations and quotations omitted). The ALJ's assessment of each treater's opinions fell far short of meeting this standard.

### A.

The ALJ stated that he gave little weight to Dr. Mercado's opinion because it was "not supported by the physician's treatment notes or the overall medical record" (R. 674). This reasoning, by itself, is "insufficient grounds for disbelieving the evidence of a qualified professional." *Brown*, 845 F.3d at 253 (holding that even if a treating physician's opinions "were

not fully corroborated by his treatment records," the ALJ erred by citing no evidence that contradicted the opinions). The ALJ here failed to explain *how* Dr. Mercado's findings were "not supported by" his treatment notes or the overall medical record, and the ALJ did not point to any contradictory medical findings. "Internal inconsistencies may provide good cause to deny controlling weight to a treating physician's opinion, but the reasoning for the denial must be adequately articulated." *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015). *See also Czarnecki v. Colvin*, 595 Fed. App'x 635, 644 (7th Cir. 2015) (ALJ erred in giving "little weight" to treating physician because ALJ failed to identify specific inconsistencies in the medical record that contradicted treating physician's assessment). Here, the ALJ failed to articulate adequately -- or, indeed, at all -- in what way Dr. Mercado's opinion was not supported.

### B.

The ALJ's decision to give Dr. Fisher's opinion adopting the RFC findings in the FCE "little weight with regard to the issue of disability" fares no better. That conclusion was inconsistent with the ALJ's own determination that Dr. Fisher's opinion "*was* supported by the evidence available to him and was not contradicted by other evidence" (R. 674, emphasis added). In fact, the ALJ recognized that medical imaging supported some of Ms. Spraggins' complaints of pain and decreased functional limitations (R. 671). The ALJ further confused his analysis of Dr. Fisher's opinion by also saying he gave it "some weight," because the FCE's findings were "actually closer to work performed at the sedentary exertional level" (R. 674).[4] The ALJ did not clarify which portions of Dr. Fisher's opinion deserved some weight and which deserved little weight. These inconsistencies and failures of explanation in the ALJ's treatment of Dr. Fisher's

---

[4] Further undermining the ALJ's opinion, the ALJ and the medical expert acknowledged that the FCE stated that Ms. Spraggins could work three to four hours per day, which is far less time than what is needed to qualify a person as capable of performing full-time sedentary work.

opinion prevent this Court from "trac[ing] the path of the ALJ's reasoning" from the evidence to his conclusions. *Enuenwosu v. Berryhill*, No. 16 C 5719, 2017 WL 2684092, at *6 (N.D. Ill. June 21, 2017).

The ALJ's analysis of Dr. Fisher's opinions between November 2010 and January 2011 likewise was confusing and inconsistent. The ALJ gave "some weight" to the opinions "to the extent that they showed the claimant's functional ability was variable after the accident," but "no weight" "[w]ith regard to the issue of disability" (R. 674). Again, the ALJ did not clarify which portions of Dr. Fisher's opinions deserved weight and which did not. In addition, the ALJ's determination that Ms. Spraggins' functional ability was "variable" sheds no light on the extent of Ms. Spraggins' functional limitations; variable could mean anything from different degrees of severely impaired, to moderately or slightly impaired.

The ALJ also stated that Dr. Fisher's opinions "each presented a snapshot of the claimant's functional ability, but were not necessarily indicative of her ability within the context of the complete treatment record" (R. 674). However, any physician's comments with regard to a particular visit will reflect a "snapshot" of a given time. But, one reason a treater's opinion normally is given controlling weight is because he or she is able to view a series of snapshots over a sufficient period of time so as to provide a more complete picture of a person's condition (a "longitudinal view") than can be obtained from one snapshot in time. *See* 20 C.F.R. § 404.1527(c)(2) (stating that the ALJ should generally give more weight to opinions from treating sources, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)"); *see also Scrogham v. Colvin*, 765 F.3d 685, 688 (7th Cir. 2014) (holding that the ALJ inappropriately undervalued the opinions of the claimant's treating physicians, "whose longitudinal view of [the claimant's]

13

ailments should have factored prominently into the ALJ's assessment of his disability status"). That is the case here, where Dr. Fisher treated Ms. Spraggins repeatedly over a substantial period of time.

In addition, we fail to understand the import of the ALJ's observation that Dr. Fisher's assessment as of June 2011 was "not necessarily indicative" of Ms. Spraggins' ability throughout the "complete treatment record" (R. 673). The ALJ does not suggest Dr. Fisher's conclusions failed to reflect Ms. Spraggins' ability during the time Dr. Fisher treated her, or why subsequent evidence that her condition may have deteriorated thereafter (there certainly was no evidence it improved) would cast doubt on Dr. Fisher's assessments. The ALJ's explanation for denying controlling weight to Dr. Fisher's opinions was not "adequately articulated." *Minnick*, 775 F.3d at 938.

## C.

The ALJ stated that he gave Dr. Brotea's RFC opinion "some weight to the extent that the physician had treated the claimant for many years" but "with regard to the issue of disability, the opinion was given no weight, as it appeared Dr. Brotea had relied more on the claimant's statements than her objective treatment notes" (R. 674). This statement tells us nothing about what portion of Dr. Brotea's opinion the ALJ rejected, and what portion the ALJ gave some weight. Moreover, in support of his decision to give no weight to Dr. Brotea, the ALJ gave only the "example" that Dr. Brotea's opinion that "[a]ll days are bad days" "was not supported by Dr. Brotea's treatment notes or more recent medical evidence" (R. 675). But, the ALJ failed to identify specific inconsistencies in the medical record that contradicted Dr. Brotea's opinion. *See Schmidt v. Colvin*, 545 F. App'x 552, 557 (7th Cir. 2013) (ALJ's explanation was "entirely

unhelpful" where it "provide[d] no indication of which portions of the record might actually be consistent with [the treating physician's] opinion").

The ALJ also failed to support his decision to give little weight to Dr. Bajaj's opinion. The ALJ stated that "it is reasonable to assume that Dr. Bajaj had relied on the claimant's reported limitations when completing [his] statement" because Dr. Bajaj had only met with Ms. Spraggins in August and September 2015 (R. 675). The ALJ erred by making assumptions "that simply lack support in the record," *Lanigan v. Berryhill*, 865 F.3d 558, 565 (7th Cir. 2017), and giving "no logical reason for discounting the opinions of these doctors," *Vanprooyen*, 864 F.3d at 572. Thus, the ALJ's determination was not supported by substantial evidence.

**D.**

Finally, in addition to his failure to adequately address evidence from Ms. Spraggins' treating physicians, the ALJ did not adequately support his decision to adopt Dr. Slodki's opinion in assessing Ms. Spraggins' RFC. The ALJ stated, in conclusory fashion, that Dr. Slodki had supported his opinion with a "detailed explanation that relied on references to the evidence to support it" after reviewing the "complete documentary record" (R. 672). This is not enough of an explanation to justify adopting a non-examining medical expert's opinion over that of treating physicians. *See Vanprooyen*, 864 F.3d at 572-73 (holding that the ALJ erred in giving substantial weight to the opinions of non-examining consulting physicians on the basis that "they had provided 'a good synopsis of the evidence' and that 'their opinions are consistent with the overall record'").

## CONCLUSION

For the reasons stated above, we grant Ms. Spraggins' motion for remand (doc. # 20), and deny the Commissioner's motion to affirm (doc. # 25).[5] We remand this case for further proceedings consistent with this opinion. The case is terminated.[6]

ENTER:

Sidney I. Schenkier
United States Magistrate Judge

Dated: September 20, 2017

---

[5] In light of the Court's ruling, we do not address the merits of plaintiff's other arguments for remand. That said, we are troubled by the ALJ's conclusion that the "extent of degenerative joint disease in the claimant's lumbar spine did not appear sufficient to generate the extent of pain to which she testified," despite recognizing that medical imaging and examinations could support Ms. Spraggins' complaints of pain (R. 671-72). The ALJ reasoned that the MRI findings from 2013 and 2014 were less persuasive than the results of a much earlier EMG/NCV study from 2010, which found no evidence of radiculopathy, neuropathy or other nerve related abnormalities (*Id.*). Because the ALJ does not cite to any medical opinion in support of his conclusion to weigh some medical evidence more strongly than other evidence, the ALJ appears to be improperly "playing doctor." On remand, the ALJ should clarify his reasoning and the evidence that supports his conclusions on this issue.

[6] We reject Ms. Spraggins' alternative request for a reversal and an outright award of benefits (Pl.'s Mem. at 17). "An award of benefits is appropriate . . . only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). Here, factual issues have not yet been resolved, and we are not prepared to say that Ms. Spraggins must inevitably be found disabled. We leave that determination to the ALJ on remand.